## COPE *v.* MERRIAM.

1. HOMESTEADS—VALUATION—LEASING WITHOUT CONSENT OF WIFE.
Where the husband, without the consent of the wife, changed a barn into a dwelling on the back 42 feet of a city lot, used as a homestead, and rented it, the total value of the premises being less than $1,500, such action did not change the character of the whole lot as a homestead. Constitution, Art. xiv, § 2.

2. SAME—FRAUDULENT CONVEYANCES—EXEMPTIONS.
The whole lot being exempt as a homestead, a subsequent conveyance of the 42 feet was not void as to creditors.

Appeal from Ionia; Davis, J. Submitted October 5, 1916. (Docket No. 52.) Decided December 21, 1916.

Bill in aid of execution by Charles S. Cope against Almon W. Merriam and others. From a decree dismissing the bill, complainant appeals. Affirmed.

*George E. Nichols,* for complainant.
*R. A. Colwell,* for defendants.

KUHN, J. It appears that from 1873 to December, 1909, the defendant Alva Merriam, now deceased, was the owner of lot No. 12, Merritt & York's addition to the city of Ionia, 136 feet deep by 66 feet wide. In December, 1909, Alva Merriam and his wife conveyed the north 42 feet of lot 12 to his son, Almon W. Merriam, and wife, for the consideration of $1, the grantees assuming the payment of a mortgage of $200 theretofore given on said north 42 feet, and giving a life lease back to Alva Merriam and his wife, and agreeing to pay rent of said premises at the rate of $8 per month. It is also claimed that at the time the defendant, Almon Merriam, had paid upwards of $300 on improvements on the house on the north 42 feet, which entered into the consideration of this deed. Some years previous to this conveyance a barn that stood upon the back or north end of the lot was transformed into a dwelling house, the original dwelling house on the south end of the lot being occupied by Alva Merriam as his homestead up to the time of his death. On May 10, 1910, suit was started by the complainant, who was a physician, on a claim for medical services, and on June 11, 1911, he recovered a judgment which, with costs, amounted to $421.20. An execution was issued and a levy made upon the entire lot 12. On October 11, 1911, this bill was filed in aid of execution. Issue was joined thereon, and subsequently Alva Merriam died, and the case was revived as against his administrator, an amended answer being filed by the defendants Almon and Carrie Merriam, in which it is stated, in addition to the statements made in the original answer, that they paid out some money on improvements on the property and the maintenance of Alva Merriam and his wife, amounting to about $1,000. After hearing the testimony the trial judge made the decree, dismissing the bill of complaint. Some testimony was taken as to

the value of the entire lot with the improvements
thereon at the time the deed was given by Alva Mer-
riam to his son, the defendant Almon Merriam, and
his wife.  William Inman, who was the supervisor
of the ward in which the property was located, and
who had lived there for about 40 years, testified that
the entire property was not worth to exceed $1,200.
Witness Comstock, who was also a resident of the
same ward for a great number of years, and whose
property adjoined the Merriam property on the west,
testified that in his judgment the property at that
time was worth about $1,200.  The defendant Almon
Merriam testified that the whole premises were worth
not to exceed $1,000 at the time the deed was given.
Other witnesses produced by the plaintiff testified that
in their opinions the property was worth in excess of
these amounts, but the trial judge, who had the benefit
of seeing and hearing the witnesses upon the witness
stand, must have concluded that the testimony in sup-
port of the defendants' claim as to value was to be
believed.

It is the contention of the appellant that, by Alva
Merriam setting off the north 42 feet and building a
house thereon for commercial purposes and subse-
quently mortgaging it for $200, it thereby became
distinct from the homestead, which consisted of the
south 94 feet upon which the house stood which was
occupied by himself and family.  However, under the
undisputed facts of this case Alva Merriam and his
wife lived on lot 12 for some 30 years; and, while it
is true that some years before the execution of the
deed in question the old barn on the north end of the
premises was made over into a dwelling house and
rented for a time at a small rental, yet, in our opinion,
this in itself could not, and did not, divest the entire
lot of its character as a homestead, unless the value
thereof was in excess of $1,500 or until the change

or leasing of the property had been consented to by Alva Merriam's wife in writing. Section 2, art. 14, Constitution of the State of Michigan. It has been repeatedly held and recently reaffirmed in *Township of Jasper* v. *Martin*, 161 Mich. 336, at page 341 (126 N. W. 437, 137 Am. St. Rep. 508), that the leasing of a part of a homsetead without the signature of the wife was absolutely void. See cases there cited. See, also, *Stauning* v. *Mercantile Co.*, 138 Minn. 478 (159 N. W. 788).

There is no proof in this case that the wife of Alva Merriam, who still resides upon the lot, has ever consented to the barn on these premises being changed over into a dwelling house, or that she consented to the same being leased; and, this not affirmatively appearing, and the testimony justifying the conclusion that the value of the lot was less than $1,500 in 1909, it must be said that the entire lot possessed all the attributes of a homestead. If this is true, it follows that the conveyance made at that time of the north 42 feet of the lot to the defendant Almon Merriam was not void as to creditors.

The decree dismissing the bill is affirmed, with costs to the defendant.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.